UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:16-cr-00077-JAW |
| | ) | |
| MICHAEL VICENTE, | ) | |
| | ) | |
| Defendant | ) | |

### RECOMMENDED DECISION ON DEFENDANT'S
### MOTION TO SUPPRESS

Through his motion to suppress (ECF No. 17), Defendant seeks to exclude from evidence statements he made during and following his arrest on September 7, 2016. Defendant contends he made the statements without the benefit of a *Miranda* warning.[1] The Government maintains that because the statements were not the result of a custodial interrogation, the statements are not excludable.

After consideration of the record evidence and the parties' arguments, I recommend the Court deny the motion.

### PROPOSED FINDINGS OF FACT

The parties agree that for purposes of the motion, the facts are as set forth in the report attached to the Government's response. (ECF No. 20-1.) I recommend, therefore, the Court find the facts included in the report, which facts are summarized below.

---

[1] Defendant also sought to exclude evidence generated as the result of the search of a cell phone confiscated during the arrest. The Government, however, reported that law enforcement officials did not search the phone. Defendant, therefore, withdrew his request regarding the cell phone and the parties arranged for the return of the phone to Defendant.

On September 7, 2016, at approximately 7 a.m., law enforcement officers knocked on the door of Defendant's residence in Thomaston, Connecticut. A woman answered the door. When the officers asked if Defendant was home, the woman directed the officers to a first floor bedroom where Defendant was sleeping. One of the officers, agent Nappi, recognized Defendant from a photograph he reviewed earlier. Agent Nappi then handcuffed Defendant with the Defendant's hands in front of Defendant.

While in the bedroom, Defendant told the officers his name was "Michael," that he had been stabbed in the abdomen on the previous day, but had left the hospital against medical advice, and that he was addicted to heroin. When the officers noticed a cellular telephone on the bed next to Defendant, Defendant said the phone belonged to him.[2]

Two officers subsequently placed Defendant in a law enforcement vehicle to transport him to the local police station. On route to the police station, one of the officers read Defendant his *Miranda* rights. Defendant stated he understood his rights, and agreed to speak with the law enforcement officers. After arrival at the police station, Defendant was placed in an interview room, where Defendant made other statements, including that "Warren" was probably responsible for Defendant's arrest, that he would "take care" of "Warren," that he only came to Maine to "get high," that he was not a large-scale drug

---

[2] Although not reflected in the report, the parties' arguments at the hearing on Defendant's motion suggested that Defendant's confirmation of his identity and his statements about his health and ownership of the phone were made in response to questions asked of him by law enforcement officers. The analysis in this recommended decision assumes the information was obtained as the result of questions asked of Defendant during the process of his arrest. In addition, as mentioned above, law enforcement officers did not search the phone. This recommended decision thus assumes the phone is not relevant to the prosecution of Defendant and does not address whether Defendant's claimed ownership of the phone is subject to exclusion.

distributor, and that he only sold oxycodone, which he obtained through a legitimate prescription.

## DISCUSSION

Defendant contends the statements he made at his home should be excluded from evidence at trial because he made the statements without the benefit of a *Miranda* warning. He also argues that under the circumstances, the subsequent *Miranda* warning was ineffective as to the interrogation that followed the warning. Defendant, therefore, seeks to exclude all statements he made to law enforcement on September 7.

### A.   Custodial Interrogation

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the United States Supreme Court stated, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." "The custodial interrogation inquiry necessarily demands determination of its two subsidiary components: 1) custody and 2) interrogation." *United States v. Ventura*, 85 F.3d 708, 710 (1st Cir. 1996).

"Determinations about *Miranda* custody begin by examining all of the circumstances surrounding the interrogation and asking whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *United States v. Ellison*, 632 F.3d 727, 729 (1st Cir. 2010) (citations and internal quotations omitted). Here, given that law enforcement placed Defendant in handcuffs at the beginning of their encounter with Defendant, the Government concedes that Defendant was in

custody when he spoke with law enforcement. The issue is whether Defendant was subject to an interrogation while in custody.

"Interrogation refers to both express questioning and its 'functional equivalent,' which includes any 'words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the subject.'" *United States v. Ventura*, 85 F.3d at 711 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). "[T]he inquiry is objective: how would the officer's statements and conduct be perceived by a reasonable person in the same circumstances?" *Id.*

Questions asked to elicit background information, such as name, address, and similar information (sometimes referred to as "routine booking questions") are generally not considered to be part of a criminal interrogation because the questions rarely generate an incriminating response. *United States v. Sanchez*, 817 F.3d 38, 45 (1st Cir. 2016). However, background and biographical inquiries can constitute an interrogation "where the law enforcement officer, in the guise of asking for background information, seeks to elicit information that may incriminate." *Id.* (quoting *United States v. Doe*, 878 F.2d 1546, 1551 (1st Cir. 1989)). The determination "turns on an objective test that asks whether the questions and circumstances were such that the officer should have reasonably expected the questions to elicit an incriminating response—meaning the officer's *actual* belief or intent, though relevant, is in no way conclusive." *Id.* (quotation marks and citation omitted, emphasis in original).

In *Sanchez,* for example, the First Circuit affirmed the district court's finding that a booking inquiry into the arrestee's employment status was a "*Miranda*–exempt background question," even though the arrestee responded that he was a drug dealer. *Id.* The First Circuit noted the district court's finding that the booking officer was not involved in the investigation of the arrestee's conduct, and merely asked the question as part of the booking process. *Id.* at 46. Citing the booking officer's hearing testimony, the Court could not conclude that there was a "direct link between the … question and [the] suspected offenses." *Id.*

Under similar circumstances, custodial questions regarding an arrestee's health or medical condition can also be exempt from the *Miranda* exclusionary rule. In *United States v. Hopkins*, No. 2:04-cv-00135-DBH, this Court denied a motion to suppress statements provided in response to routine booking questions regarding drug use. The Court observed that the inquiring officer followed a script, was not part of the investigation, and had no reason to believe that the questions would yield responses relevant to the charges on which the arrestee was detained (failure to appear and operating after suspension). The Court also noted the questions were clearly related to legitimate jail-related administrative concerns. 2005 WL 1176576, at *6, 2005 U.S. Dist. Lexis 6058, at *19 – 20 (D. Me. Apr. 5, 2005). *See also United States v. Bishop*, 66 F.3d 569, 572 n.2 (3d Cir. 1995) (holding that question regarding arrestee's limp "was part of the booking procedure designed to fulfill the government's obligation to provide medical attention if necessary"); *United States v. Linderman*, No. 0:07-CR-00359, 2008 WL 199913, at *3, 2007 U.S. Dist. Lexis 102815,

at *8 – 9 (D. Minn. Jan. 22, 2008) (questions about arrestee's mental health were asked in order to provide appropriate medical care).

Custodial questioning and conversation at the scene of an investigation or arrest (i.e., other than at booking) can also be exempt from *Miranda*. In *Pennsylvania v. Muniz*, 496 U.S. 582 (1990), the Supreme Court found that questions concerning a suspect's "name, address, height, weight, eye color, date of birth, and current age" were not interrogation because they are "normally attendant to arrest and custody." *Id.* at 600 (citing *Innis*, 446 U.S. at 301).[3] District courts have extended this rationale to on–the–scene questioning of an arrestee about the arrestee's health condition, even in non-emergency situations.[4] For example, in *United States v. Farlee*, 910 F. Supp. 2d 1174 (D.S.D. 2012), the court found that questions about the condition of an arrestee's arm did not constitute an interrogation where the arrestee asked officers to take care when handcuffing him due to an arm injury, and where the officers were not aware that the injury was evidence of a crime. *Id.* at 1181.[5]

---

[3] This Court has similarly held that a request for production of "positive identification" is not interrogation when the documentation provided in response supports a criminal charge, and that casual conversation with an arrestee during a transport is not interrogation when the arrestee offers an incriminating statement in response to an inquiry on a topic the officer has no reason to believe is "even tangentially an issue in the investigation." *United States v. Gill*, 879 F. Supp. 149, 152 (D. Me. 1995).

[4] In *New York v. Quarles*, 467 U.S. 649 (1984) (5 – 4), the Supreme Court reversed lower court decisions applying the *Miranda* exclusionary rule where the arresting officer had handcuffed the suspect and, upon noticing the arrestee was wearing an empty holster, asked where the gun was, eliciting an incriminating response. *Id.* at 657 – 58 ("recognizing a narrow exception to the Miranda rule" where there is "the need for answers to questions in a situation posing a threat to the public safety"). Arguably *Quarles*, by direct application or by analogy, would apply where the arrestee was experiencing an emergency of his own. The Government does not rely on this line of authority here, where the facts suggest Defendant received care at a hospital for his stab wound prior to his arrest.

[5] Similarly, the District Court for the Northern District of Georgia has determined that the exclusionary rule did not apply where there was no reason to believe the questions would advance the criminal investigation and elicit incriminating responses. *United States v. Najera–Perez*, No. 1:12-CR-00232, 2014 WL 888651, at *22 (N.D. Ga. Mar. 6, 2014) (questioning about the purpose of a medication sitting

In this case, the attempt by law enforcement officers to confirm Defendant's identity can reasonably be considered routine. Under the circumstances, the officers objectively had no reason to believe the inquiry would generate any incriminating evidence. In fact, the record does not suggest Defendant's response included an incriminating statement. Similarly, questions about Defendant's health, as an officer was placing Defendant in handcuffs, are reasonable to assure Defendant has no health concern that might be affected by the handcuffing process. The questions are not the type that would typically prompt an incriminating statement. Defendant, therefore, was not subject to a custodial interrogation in his home on September 7, 2016.

**B.     Post-*Miranda* Interrogation**

Given that the interaction between Defendant and law enforcement officers at Defendant's home was not a custodial interrogation as contemplated by *Miranda*, Defendant's argument that the subsequent *Miranda* warning was ineffective due to the lack of an earlier warning necessarily fails. However, even if the Court were to conclude that while arresting Defendant at his home, law enforcement officers interrogated Defendant without a *Miranda* warning while he was in custody, the subsequent *Miranda* warning would be effective as to statements made by Defendant following the warning.

In *Oregon v. Elstad*, 470 U.S. 298, 305 – 306 (1985), the Supreme Court considered whether the *Miranda* exclusionary rule should incorporate the "fruit of the poisonous tree" doctrine described in *Wong Sun v. United States,* 371 U.S. 471 (1963). The Court held that

---

on arrestee's dresser); *United States v. Donaldson*, No. 4:10-CR-00047, 2011 WL 1597685, at *8, 2011 U.S. Dist. Lexis 45142, at *20 (N.D. Ga. Apr. 26, 2011) (questioning about arrestee's health condition because arrestee looked "yellow" and ill).

the "subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Id.* at 314. The Court rejected the theory that an initial, unwarned statement creates a "lingering compulsion" requiring the exclusion of later statements given after *Miranda* warnings, even where the initial statement was an admission of guilt. *Id.* at 311.

A plurality of the Supreme Court later identified five factors to govern whether "midstream" *Miranda* warnings are effective to overcome the impact of prior, unwarned interrogation. *Missouri v. Seibert*, 542 U.S. 600, 604 (2004). The factors are: (1) "the completeness and detail of the questions and answers in the first round of interrogation"; (2) "the overlapping content of the two statements"; (3) "the timing and setting of the first and second" interrogation; (4) "the continuity of police personnel"; and (5) "the degree to which the interrogator's questions treated the second round as continuous with the first." *Id.* at 615 (affirming application of the exclusionary rule based on a question first, warn later scenario).

"When … the police deliberately employ a sequence of unwarned questioning producing disclosures, followed by *Miranda* warnings, followed closely by similar questioning, the warnings will not be taken as sufficient without curative steps to demonstrate to a reasonable suspect that in practical terms he has a genuinely free choice to decline to speak in response to the subsequent questioning set to follow on the heels of his earlier responses." *United States v. Rogers*, 659 F.3d 74, 80 (1st Cir. 2011) (Souter, J.) (citing *Seibert,* 542 U.S. at 620 – 21 (Kennedy, J., concurring)). Conversely, "where law

enforcement officers have not engaged in coercive or improper tactics in obtaining an initial statement, but merely failed to advise a defendant of his *Miranda* rights, 'determining the admissibility of a subsequent statement is relatively straightforward.'" *United States v. Verdugo*, 617 F.3d 565, 574 (1st Cir. 2010) (quoting *United States v. Marenghi,* 109 F.3d 28, 32 (1st Cir. 1997)). "Such a statement is admissible if it was obtained after the defendant: (1) was advised of his or her *Miranda* rights; and, (2) knowingly and voluntarily waived those rights." *Marenghi*, 109 F.3d at 32. The government bears the burden on these elements. *United States v. Duarte*, 160 F.3d 80, 82 n.4 (1st Cir. 1998).

Here, to the extent Defendant was subject to an interrogation in his home, the subject matter of the questions was substantively different from the questions posed and statements made after the *Miranda* warning. In addition, the location of the questioning was significantly different, and the subsequent questioning appears to have been much more extensive and more detailed. The record simply does not support the conclusion that the law enforcement officers' initial inquiries were coercive or otherwise intentionally designed to elicit incriminating statements such that a subsequent *Miranda* warning would not effectively communicate to Defendant that he could decline to answer the questions.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court deny Defendant's motion to suppress.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 7th day of February, 2017.