UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:16-cr-00077-JAW |
| | ) | |
| MICHAEL VICENTE | ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

An inmate serving a one-hundred-month sentence for his involvement in an oxycodone distribution conspiracy moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court dismisses the motion without prejudice because the inmate has not shown extraordinary and compelling reasons justify his release from incarceration and the factors under 18 U.S.C. § 3553(a) do not support release.

I.     **BACKGROUND**[1]

A.     **Factual Background**

Over the span of approximately eighteen months, Michael Vicente, a resident of the state of Connecticut, supplied nearly 15,000 oxycodone pills to a drug dealer in the state of Maine. *PSR* ¶¶ 5-15. On April 16, 2015, the federal Drug Enforcement Administration (DEA) and Somerset County Sheriff's Office executed state search warrants at the residences of two individuals. *Id.* ¶ 6. Agents discovered 240 thirty-milligram oxycodone pills, firearms, and other items associated with drug use. *Id.* After waiving his *Miranda* rights, one of the individuals (Individual 1) informed

---

[1]     The Court draws the facts concerning Mr. Vicente's offense from the Revised Presentence Investigation Report (PSR) that U.S. Probation and Pretrial Services (PO) prepared in anticipation of his sentencing. *Restricted U.S. Probation Filing*, Attach. 1, *Revised Presentence Investigation Report* (ECF No. 62). At Mr. Vicente's sentencing, the Court adopted the PSR with no factual changes. *Restricted U.S. Probation Filing*, Attach 2, *Statement of Reasons* at 1.

agents that he traveled to Connecticut on a weekly basis to buy 200 to 400 thirty-milligram oxycodone pills from Mr. Vicente for between $24 and $28 per pill. *Id.* Individual 1 further informed law enforcement that he had been illegally selling oxycodone for approximately three years and could earn approximately $2,000 per week selling the pills. *Id.*

Further investigation into Individual 1's drug trafficking revealed he initially procured oxycodone from a supplier in Maine. *Id.* ¶ 7. His supplier's supplier was Mr. Vicente. *Id.* Eventually, Individual 1's supplier introduced Mr. Vicente to Individual 1 and they agreed to cut out the middleman. *Id.* Mr. Vicente told Individual 1 that he no longer wished to "deal" with Individual 1's supplier and gave Individual 1 his contact information so Individual 1 could work directly with Mr. Vicente. *Id.* At their initial meeting, Mr. Vicente sold 80 oxycodone pills to Individual 1 and was estimated to possess between 500 and 600 pills in total. *Id.*

From then on, Individual 1 periodically contacted Mr. Vicente to buy oxycodone. *Id.* Usually, Individual 1 traveled to Connecticut to pick up the oxycodone at Mr. Vicente's residence. *Id.* Sometimes, they met at Mr. Vicente's place of employment or the Dunkin' Donuts near his home. *Id.* On approximately ten to fifteen occasions Mr. Vicente delivered the pills to Maine. *Id.* At most, Individual 1 saw Mr. Vicente in possession of 2,000 pills at his residence in addition to the pills Individual 1 purchased. *Id.* Mr. Vicente advised Individual 1 that he obtained the pills from a company that procured expired pills from hospitals, nursing homes, and similar institutions, and disposed of them. *Id.*

2

Another individual, Individual 2, met Mr. Vicente in Maine through Individual 1. *Id.* ¶ 8. Individual 2 reported that Individual 1 told him Mr. Vicente was his top supplier of oxycodone pills. *Id.* Individual 2 further informed law enforcement that he knew of two other individuals in Maine who got oxycodone pills from Mr. Vicente. *Id.* At a point during the conspiracy, Individual 1 asked those two individuals if they would drive him to Connecticut to get pills from Mr. Vicente. *Id.* ¶ 9. The individuals agreed to help and made a series of trips to Connecticut with Individual 1 to buy the pills. *Id.* ¶¶ 10-12. One of these individuals estimated he or she made between eight and ten trips to buy pills from Mr. Vicente between January and April of 2015. *Id.* ¶ 11. That person further estimated that he or she purchased 200 thirty-milligram oxycodone pills per trip. *Id.* On one occasion, Individual 1 returned to Maine with 1,000 pills. *Id.*

On September 7, 2016, law enforcement arrested Mr. Vicente at his home in Connecticut. *Id.* ¶ 13. The PO held Mr. Vicente accountable for approximately 14,900 thirty-milligram oxycodone pills, or 2,994.9 kilograms of marijuana equivalent, based on Individual 1's assertion 1 that Mr. Vicente had been selling between 200 and 400 thirty-milligram oxycodone pills per week for 17 to 18 months, along with an initial delivery of 500 thirty-milligram pills from Mr. Vicente that Individual 1 helped sell. *Id.* ¶ 15.

## B.  Procedural History

On June 8, 2016, a federal grand jury in the District of Maine issued a one-count indictment charging Mr. Vicente with conspiracy to distribute and to possess

with intent to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846. *Indictment* at 1 (ECF No. 3).  On June 1, 2017, Mr. Vicente pleaded guilty to the conspiracy as charged in the indictment.  *Min. Entry* (ECF No. 33).  On November 8, 2017, the Court sentenced Mr. Vicente to one hundred months of imprisonment, three years of supervised release, and a $100 special assessment.  *Min. Entry* (ECF No. 40); *J.* (ECF No. 41).  Mr. Vicente appealed his sentence to the First Circuit, which affirmed this Court on November 20, 2018.  *J.* (ECF No. 55); *United States v. Vicente*, 909 F.3d 20 (1st Cir. 2018).

On March 2, 2021, Mr. Vicente moved pro se for appointment of counsel to file a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  *Req. for Appointment of Counsel* (ECF No. 59).  The next day, the Court granted the motion and appointed Attorney Verne Paradie to represent him.  *Order* (ECF No. 60).  On April 13, 2021, Mr. Vicente filed a motion for compassionate release.  *Pet. for Compassionate Release* (ECF No. 68) (*Def.'s Mot.*).  The following day, the Court ordered Mr. Vicente and the Government to clarify his COVID-19 vaccination status and to provide evidence corroborating the assertions Mr. Vicente had made about his health.  *Order* (ECF No. 70).

On April 27, 2021, the Government responded to the Court's April 14, 2021 order, informing the Court that Mr. Vicente received both doses of the Pfizer-BioNTech COVID-19 vaccine.  *Gov't's Report Regarding Vaccination of Def.* (ECF No. 73) (*Vaccination Notice*).  The next day, Mr. Vicente filed an amended petition for compassionate release.  *Am. Pet. for Compassionate Release* (ECF No. 74) (*Def.'s*

*Am. Mot.*).   On April 29, 2021, the Government responded in opposition to Mr. Vicente's motion for compassionate release.   *Gov't's Obj. to Def.'s Mot. for Compassionate Release* (ECF No. 75) (*Gov't's Opp'n*).   Mr. Vicente did not reply.

## II.   THE PARTIES' POSITIONS

### A.   Michael Vicente's Motion and Amended Motion

Mr. Vicente's initial motion for compassionate release claims that his "medical issues place him at high risk of death from COVID-19 and constitute compelling and extraordinary circumstances, justifying his release." *Def.'s Mot.* at 2.   He says he has already contracted COVID-19 "and is susceptible of contracting it or another strain again." *Id.*   Mr. Vicente attached his prior request for appointment of counsel, which claims he is at risk from COVID-19 because he is obese, faces harsh conditions of confinement due to COVID-19 prevention protocols, and that his prison provides poor medical care. *Id.*, Attach. 1, *Req. for Appointment of Counsel* at 1-3.

In his amended motion for compassionate release, Mr. Vicente represents that he faces "significant risk" of complications from COVID-19 infection. *Def.'s Am. Mot.* at 2.   Although Mr. Vicente contracted COVID-19 and is now fully vaccinated against it, he claims "it is unknown if the current vaccination will protect him from contracting the current, or some other strain of the Coronavirus." *Id.* at 1-3.   Mr. Vicente also asks the Court to consider other factors favoring release, such as his acceptance of responsibility, "his lifelong struggle with drug addiction" and participation in treatment while incarcerated, and that he "has worked hard at

learning to maintain his sobriety and if sober, he presents little risk to the community." *Id.* at 3-4.

### B.   The Government's Opposition

The Government urges the Court to deny Mr. Vicente's motion for compassionate release because he "has now been vaccinated and, therefore, his underlying [obesity] in combination with the pandemic should not be viewed as an extraordinary and compelling reason warranting release." *Gov't's Opp'n* at 1. The Government also notes that the 18 U.S.C. § 3553(a) factors do not favor release. *Id.* On the first point, the Government cites numerous cases for the proposition that vaccination against COVID-19 strongly weighs against a finding of extraordinary and compelling reasons to release an inmate. *Id.* at 10-13. It contends "it is now highly unlikely that [Mr. Vicente] will contract COVID-19 and, in the unlikely event that he did, his prior experience demonstrates that someone who contracts the virus will not necessarily become seriously ill." *Id.* at 14.

Turning to the section 3553(a) factors, the Government says Mr. Vicente's release would endanger to the community. *Id.* at 14. It points out that Mr. Vicente engaged in the oxycodone distribution conspiracy while on probation in Connecticut for a felony drug offense. *Id.* at 15. The Government also says that Mr. Vicente has been disciplined in prison for possession of alcohol and possession of a hazardous tool. *Id.* It reminds the Court of the severity of the offense, specifically that Mr. Vicente "supplied nearly 15,000 oxycodone 30 mg tablets to drug dealers who flooded small towns of Central Maine with the drugs." *Id.* at 16. The Government therefore urges

6

that Mr. Vicente "is a drug dealer who is not easily deterred," that the amount of time he has served is inadequate to deter him, and therefore the section 3553(a) factors weigh against his release. *Id.* at 17.

## III.   LEGAL STANDARD

The Court has addressed the legal standard for deciding a motion for compassionate release on numerous occasions. *See, e.g.*, *United States v. Crosby*, No. 1:17-cr-00123-JAW-01, 2020 U.S. Dist. LEXIS 199085, at *16-23 (D. Me. Oct. 27, 2020). Put succinctly, 18 U.S.C. § 3582(c)(1)(A)(i) permits a court to modify a term of imprisonment when (1) "extraordinary and compelling reasons warrant" the movant's release, (2) release is consistent with "the factors set forth in [18 U.S.C. §] 3553(a)", and (3) release comports with "applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A).[2]

The movant bears the burden of proving that he is entitled to a sentence reduction, and "the Court has broad discretion in deciding whether to grant or deny a motion for sentence reduction." *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, 473 F. Supp. 3d 14, 16 (D.N.H. 2020) (internal citations omitted)).

---

[2]      The United States Sentencing Commission issued a policy statement under United States Sentencing Guideline § 1B1.13 for addressing compassionate release motions brought by the Director of the Bureau of Prisons under § 3582(c)(1)(A). However, "[t]he Sentencing Commission promulgated this policy statement before the emergence of the COVID-19 pandemic and before the changes to § 3582 put in place by the FIRST STEP Act." *Crosby*, 2020 U.S. Dist. LEXIS 199085, at *20 n.1. This Court agrees with the vast majority of courts that have held § 1B1.13 "'provides helpful guidance' but 'is not ultimately conclusive given the statutory change.'" *United States v. Rembert*, No. 2:12-CR-66-DBH, 2020 U.S. Dist. LEXIS 210841, at *1 (D. Me. Nov. 11, 2020) (quoting *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019), *aff'd*, No. 19-1785 (1st Cir. July 23, 2020)); *see United States v. Trenkler*, Cr. No. 92-10369 WES, 2021 U.S. Dist. LEXIS 87567, at *16 (D. Mass. May 6, 2021) (collecting cases).

7

## IV.  DISCUSSION[3]

Mr. Vicente has failed to persuade the Court that extraordinary and compelling reasons justify his release from incarceration.  Mr. Vicente and many other inmates at FCI Schuylkill are vaccinated against COVID-19, which greatly reduces his risk of contracting the virus and becoming seriously ill.  Additionally, the section 3553(a) factors do not favor release.  Mr. Vicente was a major supplier of an interstate oxycodone distribution conspiracy.  He is also a recidivist.  The nature and seriousness of this offense, the need for just punishment, and the need to deter him and others similarly situated tips the scales against release.  Therefore, the Court dismisses Mr. Vicente's motion without prejudice.

### A.  Extraordinary and Compelling Reasons

To grant Mr. Vicente's motion under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must find "extraordinary and compelling reasons warrant[ing]" a reduction in sentence.  Mr. Vicente claims that his risk of severe complications if he contracts COVID-19 again is an extraordinary and compelling reason for his release.  *Def.'s Am. Mot.* at 2-3.  The Court disagrees.  It has reviewed Mr. Vicente's medical records, applicable guidance from the Centers for Disease Control and Prevention (CDC), and conditions at FCI Schuylkill, where Mr. Vicente is incarcerated.  In light of Mr. Vicente's vaccination and the low incidence of COVID-19 infections at FCI

---

[3]    18 U.S.C. § 3582(c)(1)(A) contains an administrative exhaustion requirement that bars some compassionate release motions as untimely.  *United States v. Cain*, No. 1:16-cr-00103-JAW-1, 2021 U.S. Dist. LEXIS 20672, at *9-10 (D. Me. Feb. 3, 2021).  However, the Government may waive or concede exhaustion.  *Id.* at 10.  Here, the Government conceded Mr. Vicente complied with the exhaustion requirement and the Court therefore considers Mr. Vicente's motion on the merits.  *Gov't's Opp'n* at 10 n.6.

Schuylkill, the Court concludes Mr. Vicente failed to show extraordinary and compelling reasons justify his release.

The first consideration is Mr. Vicente's health profile. At the outset, the Court notes Mr. Vicente tested positive for COVID-19 on December 16, 2020. *Def.'s Am. Mot.*, Attach. 1, *Def.'s Attachs.* at 7. He entered ten days of medical isolation and, as of January 7, 2021, was free of any COVID-19 symptoms. *Id.* The Court regrets that Mr. Vicente contracted COVID-19 while incarcerated but is gratified that he has recovered. His motion does not mention lingering complications or symptoms from his prior COVID-19 infection. Therefore, as the Court understands it, Mr. Vicente is not asserting that his prior COVID-19 infection is an extraordinary and compelling reason for release.

An analysis of Mr. Vicente's current risk from COVID-19 is appropriate. According to the CDC, several factors increase a person's risk of severe illness from COVID-19. Arguably, the most decisive is age. *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited June 3, 2021). Generally, the risk of COVID-19 increases as a person ages and over eighty percent of deaths occur in people aged sixty-five or older. *Id.* The age-related risk does not disappear when a person is younger than sixty-five. *See id.* (Table entitled "Risk of COVID-19 Infection, Hospitalization, and Death By Age Group"). Fortunately, Mr. Vicente is thirty-three years old and therefore does not fall within the age-related high-risk category. *Id.*

Mr. Vicente's body mass index (BMI) factors into the risk analysis as well. The CDC says "the risk of severe COVID-19 illness increases sharply with elevated BMI." *People with Certain Med. Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 3, 2021) (*CDC COVID Med. Conditions*). The CDC defines "severe obesity" as having a BMI of more than 40 kg/m². *Id.* Applying this definition, Mr. Vicente is severely obese. *Def.'s Attachs.* at 14. Although the record is more than a year old, as of February 27, 2020, Mr. Vicente had a body mass index (BMI) of 56.1 kg/m². Pursuant to CDC guidance, the Court concludes that Mr. Vicente's severe obesity may increase his risk of severe illness and death if he contracts COVID-19.

Despite his severe obesity, the Court concludes the risk to Mr. Vicente from COVID-19 is not an "extraordinary and compelling" reason for his release. Medical records from the Bureau of Prisons (BOP) indicate Mr. Vicente is fully vaccinated against COVID-19. *Vaccination Notice*, Attach. 1, *Bureau of Prisons Health Servs. Immunizations* at 1. Mr. Vicente's vaccination greatly reduces his risk of serious illness. According to the CDC, "COVID-19 vaccines are effective at preventing COVID-19 disease, especially severe illness and death" and "reduce the risk of people spreading COVID-19." *When You've Been Fully Vaccinated*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited June 3, 2021).

Due to the effectiveness of the COVID-19 vaccines, the Court concludes Mr. Vicente has failed to show extraordinary and compelling reasons for his release.

This conclusion is consistent with the Court's prior decisions, and a decision by Judge Walker of this District. *See United States v. Akerson*, No. 1:16-cr-00130-JAW-1, 2021 U.S. Dist. LEXIS 88842, at *26-27 (D. Me. May 10, 2021) (citing *United States v. Pignatello*, No. 1:19-cr-68-LEW, 2021 U.S. Dist. LEXIS 70677, at *2 (D. Me. Apr. 13, 2021)); *United States v. French*, No. 1:12-cr-00160-JAW-1, 2021 U.S. Dist. LEXIS 87013, at *44 (D. Me. May 6, 2021). Although Mr. Vicente argues he may still be at risk of contracting new variants of COVID-19, the Court concludes he has failed to meet his burden to show the risk of the variants is extraordinary and compelling under 18 U.S.C. § 3582(c)(1)(A). At present, CDC guidance indicates the vaccines "may work against some variants but could be less effective against others." *When You've Been Fully Vaccinated*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited June 3, 2021). On the record before the Court, Mr. Vicente failed to demonstrate a concrete risk from COVID-19 variants sufficient to justify his release.

A final consideration is the prevalence of COVID-19 at FCI Schuylkill where Mr. Vicente is incarcerated. FCI Schuylkill is a medium security federal correctional institution with an adjacent minimum-security satellite camp. *FCI Schuylkill*, CDC, https://www.bop.gov/locations/institutions/sch/ (last visited June 3, 2021). There are 931 inmates at the FCI and 125 inmates at the Camp. *Id.* At present, no inmates or staff at FCI Schuylkill are positive for COVID-19. *COVID-19 Coronavirus*, BOP, https://www.bop.gov/coronavirus/ (last visited June 3, 2021). Throughout the pandemic, 539 inmates and 73 staff at FCI Schuylkill have tested positive for the

11

virus.  *Id.*  None has died.  *Id.*  Additionally, 93 staff and 524 inmates at FCI Schuylkill are fully vaccinated against COVID-19.  *Id.*

The Court concludes the low incidence of COVID-19 infections and increasing number of vaccinated inmates at FCI Schuylkill weighs against Mr. Vicente's motion for compassionate release.  When considered alongside the fact that Mr. Vicente is vaccinated, has previously recovered from COVID-19, and is relatively young, the Court concludes the likelihood he will come in contact with the COVID-19 virus is relatively low, and the likelihood he will contract it and suffer severe symptoms is even lower.  Therefore, the Court concludes there are no extraordinary and compelling reasons that justify Mr. Vicente's release.

### B.    The Section 3553(a) Factors

The Court also considered the 18 U.S.C. § 3553(a) factors.  Although the Court considered each factor, the Court discusses only the most pertinent factors here.  The Court first considered the nature and circumstances of the offense and the need for just punishment.  Over the span of eighteen months, Mr. Vicente was the chief supplier of oxycodone for an interstate drug trafficking conspiracy.  All told, he was responsible for funneling nearly 15,000 oxycodone pills into the small rural communities of central Maine.  As the Court stressed to Mr. Vicente at his sentencing, "the quantity of drugs is just staggering on those little tiny towns."  *Tr. of Proceedings* at 34:8-9 (ECF No. 53) (*Sentencing Tr.*).  Mr. Vicente's crime was manifestly serious and, in the Court's view, deserves considerable punishment.  The Court finds that

early release would fail to reflect the seriousness of Mr. Vicente's lengthy participation in the oxycodone distribution conspiracy. This weighs against release.

The Court also considered the need to protect the public from Mr. Vicente and the need for deterrence. Both specific and general deterrence are applicable to in Mr. Vicente's case. Prior to his federal conviction, Mr. Vicente had a number of prior convictions in Connecticut state court. *PSR* ¶¶ 33-38. Two for drug crimes. *Id.* ¶¶ 35, 38.

First, in 2009, Mr. Vicente entered an *Alford*[4] plea to one count of possession with intent to sell or dispense a controlled substance. *Id.* ¶ 35. Police records indicate that Mr. Vicente was selling cocaine from a residence owned by one of his good friends. *Id.* Police purchased 13.5 grams of cocaine from him through a controlled buy. *Id.* They then obtained and executed a search warrant for the residence. *Id.* The search yielded thirty-seven hydrocodone pills, a large plastic bag containing 224.9 grams of marijuana, numerous smaller plastic bags packaged for resale containing 214.6 grams of marijuana, a third bag containing 1.4 grams of marijuana, and numerous items of drug paraphernalia. *Id.* He was sentenced to thirty months of imprisonment for this offense. *Id.*

In 2012, Mr. Vicente was again convicted of possession with intent to sell and dispense a controlled substance. *Id.* ¶ 38. On July 31, 2013, he received a five-year suspended sentence and three years of probation. *Id.* Mr. Vicente was on probation for that offense while engaging in the instant oxycodone distribution conspiracy. *Id.*

---

[4]     *North Carolina v. Alford*, 400 U.S. 25 (1970).

In the Court's view, this timeline is troubling and confirms that Mr. Vicente's prior sentences failed to adequately deter him from future criminal behavior. Accordingly, the Court finds continued incarceration is needed to deter Mr. Vicente from future crimes.

General deterrence is also relevant. Particularly in instances like this, where Mr. Vicente was involved in an interstate drug trafficking conspiracy, a substantial sentence is necessary to warn others against engaging in similar conduct. As the primary supplier of oxycodone, Mr. Vicente was an integral figure in the drug conspiracy. An early release would send the wrong message to others in the illegal drug world of central Maine and elsewhere that even significant drug dealers will be treated with leniency. By the Court's calculation, Mr. Vicente has served approximately sixty-three percent of his statutory term and fifty-six percent of his full term. In the Court's view, this period is too short to achieve the criminal law's deterrent goals.

### C.    Summary

In summary, the Court concludes that Mr. Vicente has not met his burden to show extraordinary and compelling reasons for his release and that the section 3553(a) factors do not support release. While Mr. Vicente's obesity may increase his risk of serious complications from COVID-19, he is now vaccinated and so his risk of severe illness from COVID-19 is substantially reduced. Furthermore, given the nature and seriousness of his offense, and the need for just punishment and deterrence, releasing Mr. Vicente early would contravene the section 3553(a) factors.

14

The Court wishes Mr. Vicente the best and fully expects he will return to society a productive and law-abiding citizen.  However, on the record before it, the Court concludes he is not an appropriate candidate for compassionate release.

## V.    CONCLUSION

The Court DISMISSES without prejudice Michael Vicente's Petition for Compassionate Release (ECF No. 68).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of June, 2021.

15